UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

MAURICE GORDON,

            *Petitioner*,

     -*against*-

JOHN COVLIN,[1] Superintendent of
Five Points Correctional Facility,

         *Respondent*.

----------------------------------X

**MEMORANDUM & ORDER**

16-CV-5280(KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

       Petitioner Maurice Gordon ("Mr. Gordon"), proceeding *pro se,* filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 ("Section 2254"), challenging the constitutionality of his conviction and sentence in state court for various counts of selling and possessing narcotics. (*See generally* ECF No. 1, Petition for Writ of *Habeas Corpus* ("Pet.").) Respondent opposes the petition, arguing that aspects of it are procedurally barred, and that it is without merit. (*See generally* ECF No. 7, Memorandum of Law in Opposition to Petition ("Opp.").) For the reasons discussed

---

[1] This case was incorrectly docketed as *Gordon v. Colin*, rather than *Gordon v. Colvin*. Mr. Colvin was the superintendent of Five Points Correctional Facility, Mr. Gordon's place of incarceration, when the instant petition was filed. Subsequently, Mr. Gordon was transferred to the Otisville Correctional Facility. (*See* Dkt. Order June 10, 2020.) The District Attorney of Kings County ("Respondent") represents respondent in this matter pursuant to an agreement with the Attorney General of the State of New York. (ECF No. 7, ECF pp. 2-10 ADA Seth Lieberman Affidavit in Opposition ("Aff. in Opp."), at 2.)

below, Mr. Gordon's petition is DENIED and dismissed in its entirety.

## Background

On December 16, 2009, Mr. Gordon was arrested by the New York Police Department's Street Narcotics Enforcement Unit ("SNEU") in Brooklyn, New York after allegedly selling controlled substances to three individuals.  (Aff. in Opp. ¶ 3.) The police recovered from Mr. Gordon a plastic bag containing multiple bags of marijuana, $1,126 in cash, and fifteen small plastic "twisty" bags, each containing crack-cocaine.  (*Id.*)

## I.   The Indictment, Pre-Trial Proceedings, and Plea Negotiations

Mr. Gordon was charged by Kings County Indictment Number 11563/2009 with three counts of Criminal Sale of a Controlled Substance in the Third Degree, in violation of New York Penal Law ("NYPL") § 220.39(1); one count of Criminal Possession of a Controlled Substance in the Fourth Degree, in violation of NYPL § 220.09; one count of Criminal Possession of a Controlled Substance in the Seventh Degree, in violation NYPL § 220.03; and one count of Unlawful Possession of Marihuana, in violation of NYPL § 221.05.  (*Id.* at ¶ 4.)  Subsequently, Mr. Gordon was also indicted on one count of Criminal Possession of a Controlled Substance in the Third Degree, in violation of NYPL § 220.16(1).  (ECF No. 6-3, March 9, 2012 Pre-trial Proceeding ("March 9, 2012 Proceeding"), at 4.)

John Godfrey, Esq., a legal aid attorney, represented Mr. Gordon at a preliminary hearing, and served a motion for Mr. Gordon to testify before the grand jury.[2] (ECF No. 6-2, March 6, 2012 Pre-Trial Proceeding ("March 6, 2012 Proceeding"), at 17.) As is discussed more below, Mr. Gordon did not ultimately testify before the grand jury, because the motion was withdrawn.

Subsequently, Robert Reuland, Esq. ("Mr. Reuland") was Mr. Gordon's assigned attorney at arraignment in April 2010. (*Id.* at 15.) Mr. Reuland then requested to be relieved on June 1, 2010. (*Id.*) Though he had not yet been relieved by the court, Mr. Reuland failed to appear for a hearing on June 28, 2010, and the case was adjourned until July 16, 2010. (*Id.*) At the hearing on July 16, 2010, Mr. Reuland stated that after discussion with Mr. Gordon, Mr. Gordon "believe[d] that he was

---

[2] New York Criminal Procedure Law ("NYCPL") provides that:

When a criminal charge against a person is being or is about to be or has been submitted to a grand jury, such person has a right to appear before such grand jury as a witness in his own behalf if, prior to the filing of any indictment or any direction to file a prosecutor's information in the matter, he serves upon the district attorney of the county a written notice making such request and stating an address to which communications may be sent. The district attorney is not obliged to inform such a person that such a grand jury proceeding against him is pending, in progress or about to occur unless such person is a defendant who has been arraigned in a local criminal court upon a currently undisposed of felony complaint charging an offense which is a subject of the prospective or pending grand jury proceeding. In such case, the district attorney must notify the defendant or his attorney of the prospective or pending grand jury proceeding and accord the defendant a reasonable time to exercise his right to appear as a witness therein . . . .

NYCPL § 190.50(5)(a).

denied his right to testify in the grand jury," and that "Mr.
Gordon wishe[d] the Court to appoint a new attorney at this
time." (ECF No. 6-1, July 16, 2010 Pre-trial Proceeding ("July
16, 2010 Proceeding"), at 3.)

Harold Baker, Esq. ("Mr. Baker") was then assigned to
represent Mr. Gordon, and on September 23, 2010, the prosecution
offered Mr. Gordon a plea agreement stipulating to one and a
half years of incarceration. (March 6, 2012 Proceeding at 16.)
Mr. Gordon refused this offer, and on November 18, 2010, a trial
date was set for early 2011. (*Id.*)

The trial date was adjourned various times throughout
2011. Mr. Baker was relieved as counsel, and Mr. Gordon
retained Jack Goldberg, Esq. ("Mr. Goldberg"), who began
preparing for trial. (*Id.*) However, on March 6, 2012, the week
before Mr. Gordon's trial was to begin, Mr. Goldberg requested
to be relieved because Mr. Gordon "indicated that when he heard
[the plea] offer," he felt that Mr. Goldberg had "done nothing
for him." (*Id*. at 9.) The state trial judge informed Mr.
Gordon that if Mr. Goldberg were relieved and yet another
attorney were assigned, it would be his "last lawyer," and the
court would not "put[] this case over." (*Id*. at 19.)

Mr. Gordon moved *pro se* to dismiss the indictment
pursuant to NYPL § 210.20 on the ground that he was denied the
right to testify before the grand jury pursuant to New York

4

Criminal Procedure Law. (*Id.* at 17-18.) The court denied Mr. Gordon's motion because it was untimely. (*Id.* at 18.) At the same hearing, Assistant District Attorney Darren Albanese, Esq. ("ADA Albanese") informed the court of a 2010 email from Mr. Gordon's then-counsel, Mr. Reuland, to the former ADA responsible for the case, that stated: "Further to our telephone conversation, this will affirm that I am withdrawing cross 190.50 notice in this matter." (*Id.* at 21.) Based on this email showing that Mr. Gordon's counsel had withdrawn Mr. Gordon's motion to testify before the grand jury, the court repeated it denial of his motion based "upon the applicable law and the withdrawal of 190.50 notice . . . ." (*Id.*)

The court then appointed Phillip Smallman, Esq. ("Mr. Smallman") to represent Mr. Gordon at trial. (*Id.* at 24-26.) Mr. Goldberg stated in court that he briefed Mr. Smallman and that Mr. Smallman could "call upon [Mr. Goldberg] to confer" regarding any questions or information related to Mr. Gordon's case. (*Id.* at 24.) Mr. Smallman stated that he had been "given the parameters" and "was comfortable" with representing Mr. Gordon. (*Id.* at 25.) He then stated that he understood that "the court was looking to do [the trial] at some point early next week," and that was "fine." (*Id.*)

After the court stated that it wished to begin trial the following Monday, March 12, 2012, Mr. Smallman requested to

5

proceed instead on Tuesday, March 13, 2012. (*Id.*) The court granted this request so that Mr. Smallman would "have the opportunity to confer with [his] client" before trial began. (*Id.*) The court also noted that it was "up to [Mr. Gordon] to get along with Mr. Smallman." (*Id.* at 26.) The court continued:

> Mr. Smallman is a very, very experienced criminal defense attorney in this county and other counties. And if you don't like his advice, that's too bad, but certainly he will work with you. I am sure he will give you the best defense possible under the law and the facts of this case[.]

(*Id.*)

On March 9, 2012, ADA Albanese conveyed another plea offer in court, in the presence of Mr. Gordon:

> I want it to be clear to defense counsel and the defendant the offer in this case is four years jail. And I did some more research to confirm what we discussed earlier in the week with regards to possible consecutive time should the defendant be convicted, and the defendant is, in fact, facing consecutive time on the four top counts, all B felonies, each of them carry with them a possible jail sentence of two years jail to 12 years jail. Should the defendant be convicted and should the defendant be convicted on all four top counts, the People will be seeking consecutive time based on the defendant's record and based on some other factors, which when we get to that point, the People will bring to the Court's attention.
>
> Also, this is the last day that we will be offering four years jail. If we continue on with the preliminaries, the offer will be called off and the defendant would have to receive some sort of plea from your Honor, because the People would not be offering anything today.

(March 9, 2012 Proceeding at 3-4.)

> The judge clarified the offer:
>
> [J]ust so we are clear, I thought I understood from you that if the defendant was interested in a plea in this case for four years jail plus probably three years post-release supervision and surcharges, and if he has [a] new [case], that four years would also cover the new case, we'll say, even though it has not been indicted.

(*Id.* at 4.)  ADA Albanese stated that the judge was "correct."

(*Id.*)  Mr. Smallman, in the presence of Mr. Gordon, rejected the plea offer, and stated:

> I believe we are ready to proceed Judge, I have had discussions with [Mr. Gordon] since being assigned to the case, and I do not have any indication at this point that he was interested in disposing of the matter.

(*Id.* at 5.)

## II.  Trial and Sentence

Mr. Gordon's trial commenced on March 15, 2012.[3] (Trial Tr. at 2.)  The prosecution presented six witnesses: Police Officer Hector Morales ("Officer Morales"), Police Officer Edwin Ferreira ("Officer Ferreira"), NYPD Laboratory criminalist Danielle Buthorn ("Ms. Buthorn"), Police Officer Christopher Salamone ("Officer Salamone"), Police Officer Edwin Simon ("Officer Simon"), and Sergeant Kurt Trotman ("Sergeant Trotman").

---

[3] The trial transcripts in *People v. Gordon* ("Trial Tr.") are available at ECF Nos. 6-4 (pp. 1-210), 6-5 (pp. 211-385), and 6-6 (386-541).

Officer Morales testified that he had been the "observing officer"[4] on the evening of December 16, 2009, and was parked on Troy Avenue in Brooklyn. (*Id.* at 65-67.) Officer Morales testified that the streets were well-lit at 7:00 p.m. (*Id.* at 68.) Officer Morales saw people approach an individual and hand him money, and the individual "would reach into the waistband and hand them something, an object, and then they would just walk away." (*Id.* at 68-69.) Officer Morales identified Mr. Gordon at trial as the individual he observed. (*Id.* at 69-70.)

Officer Morales testified that he then radioed directions to the apprehension team three times, at 7:10 p.m., at 8:10 p.m., and at 8:15 p.m., respectively. (*Id.*) Officer Morales testified that he later observed Mr. Gordon entering a bar at 259 Troy Avenue, and that after 20 minutes, he radioed the apprehension team to arrest Mr. Gordon inside the bar. (*Id.* at 88-89.)

Officer Ferreira also testified that Troy Avenue was well-lit on the night of December 16, 2009. (*Id.* at 175.) Officer Ferreira received a radio transmission at 7:10 p.m. from Officer Morales that a drug transaction took place, and Officer

---

[4] Officer Morales testified that the observing officer assigned to the SNEU unit will observe to identify "any drug sales, things of that nature" at a particular location. (*Id.* at 64.)

Morales provided the buyer's description and location.  (*Id.* at
176.)  Officer Ferreira arrested an individual, Henry Esson, who
met the description, and recovered a bag containing alleged
crack-cocaine from his socks.  (*Id.* at 176-78.)

At 8:10 p.m., Officer Ferreira testified that he
received another communication from Officer Morales describing
another buyer.  (*Id.* at 179.)  Officer Ferreira stopped an
individual meeting the description, Robert Smith, and recovered
alleged crack-cocaine from his jacket pocket.  (*Id.* at 179-180.)

Officer Ferreira received a third communication at
8:15 p.m. describing a third buyer.  (*Id.* at 180-81.)  Officer
Ferreira stopped an individual meeting the description, Mark
McMahon, and recovered four plastic bags containing alleged
crack-cocaine.  (*Id.* at 181.)

Officer Ferreira received another radio transmission
from Officer Morales at approximately 9:00 p.m., providing the
description of the seller as a tall black male with "medium
complexion," wearing a dark-colored jacket and blue jeans, who
entered a bar at 259 Troy Avenue.  (*Id.* at 184-85.)  Officer
Ferreira testified that when he entered the bar at 259 Troy
Avenue, he identified an individual that fit the description,
and identified the individual in court as Mr. Gordon.  (*Id.* at
185-86.)  Officer Ferreira, who was accompanied by several other

officers, including Sergeant Trotman, arrested Mr. Gordon and
took him to the 77th precinct police station.  (*Id*. at 186-87.)

Sergeant Trotman testified that he assigned Officer
Ferreira and Officer Simon to conduct a strip search of Mr.
Gordon because of the quantity of marijuana that he was told was
recovered from "his waistband in the back" (*id*. at 339, 363),
and he saw Officer Ferreira recover "a quantity of alleged
crack" during the strip search (*id*. at 341).  Officer Ferreira
testified that after Mr. Gordon was told he would be strip
searched, he became "very belligerent," and started reaching
toward the back of his waistband.  (*Id*. at 187-88.)  Officer
Ferreira testified that Mr. Gordon attempted to fight him and
Officer Simon during the strip search.  (*Id*.)  Officer Ferreira
testified that after wrestling Mr. Gordon to the ground, he
recovered alleged crack-cocaine in a plastic bag from the back
of his waistband.  (*Id*. at 188.)

Officer Simon also identified Mr. Gordon, and
testified that he observed Officer Salamone "recover a quantity
of marijuana from [Mr. Gordon]'s hand."  (*Id*. at 282-83.)
Further, Officer Simon testified that he recovered $1,126 from
Mr. Gordon's pocket.  (*Id*. at 283-85.)  Officer Simon testified
that when Mr. Gordon reached to his back waist area, he and
Officer Ferreira struggled with Mr. Gordon.  (*Id*. at 287.)
Officer Simon stated that Officer Ferreira retrieved a white

10

"rocky" substance from his back waist that he believed to be crack-cocaine. (*Id.*)

Ms. Buthorn, the lab criminalist, testified that she received ten items recovered by the police from Mr. Gordon containing either white solid material, moist solid material, or vegetative materials. (*Id.* at 231-32.) Ms. Buthorn testified that six of the items were identified as crack-cocaine, greater than one-eighth of an ounce. (*Id.* at 234-35.) Ms. Buthorn testified that two of the items were revealed to be marijuana. (*Id.* at 231, 236.)

After the prosecution rested, Mr. Smallman made a motion on behalf of Mr. Gordon to dismiss the case, which the court denied. (*Id.* at 369.) The defense then rested without putting on a case, choosing to hold the prosecution to its burden of proof. (*Id.* at 373.)

On March 23, 2012, Mr. Gordon was convicted by a unanimous jury of Criminal Possession of a Controlled Substance in the Third Degree, and three counts of Criminal Sale of a Controlled Substance in the Third Degree. (*Id.* at 533.) Mr. Gordon was found not guilty of Criminal Possession of a Controlled Substance in the Fourth Degree and not guilty of Unlawful Possession of Marijuana. (*Id.*) On April 23, 2012, Mr. Gordon was sentenced as a second felony drug offender to consecutive terms of incarceration of eight years for each count

11

of Criminal Sale of a Controlled Substance, and eight years, to run concurrently, for the count of Possession of a Controlled Substance, for a total term of incarceration of twenty-four years, with three years of post-release supervision. *People v. Gordon*, 132 A.D.3d 904, 904 (2d Dep't 2015); (Aff. in Opp. ¶ 16).

### III. Procedural History

Lynn W. L. Fahey, Esq. ("Ms. Fahey") was assigned as Mr. Gordon's appellate counsel. Patricia Pazner, Esq. ("Ms. Pazner"), a colleague of Ms. Fahey, submitted Mr. Gordon's first appellate brief to the Appellate Division, Second Department on May 9, 2014. (ECF No. 6-7, Mr. Gordon's Appellate Brief ("Main Appellate Br.").)

Mr. Gordon's appellate brief asserted two grounds for relief. First, he argued that the verdict was against the weight of evidence, because Officer Morales was positioned too far away from the individual who was selling narcotics to get a clear view, and the police officers only found drugs on Mr. Gordon after a fourth search. (*Id.* at 3.) Mr. Gordon also argued that his sentence was excessive. (*Id.*) The State submitted its opposition brief on July 22, 2014. (ECF No. 6-8, People's Brief in Opposition to Petitioner's Appellate Brief.) On May 15, 2015, Mr. Gordon submitted a *pro se* supplemental appellate brief. (ECF No. 6-9, Petitioner's *Pro Se* Supplemental

Appellate Brief dated May 15, 2015 ("*Pro Se* Appellate Br.").)
Mr. Gordon's *pro se* brief set forth two additional grounds for
relief, which were that he was denied effective assistance of
counsel during plea negotiations, and that the withdrawal of his
request to testify before the grand jury required dismissal of
the indictment.  (*Id*. at 3, 13.)

On October 21, 2015, the Appellate Division issued a
decision, holding that the evidence was sufficient to support
the conviction, Mr. Gordon did not receive ineffective
assistance of counsel, Mr. Gordon waived his argument that he
was deprived of his right to testify before a grand jury, and
Mr. Gordon's sentence of three consecutive eight-year prison
terms was excessive.  *Gordon*, 132 A.D.3d at 904-05.  The
Appellate Division ordered that the judgement be modified to
reduce "the determinate terms of imprisonment imposed on each of
the convictions from eight years to be four years," for a total
prison term of twelve years.  *Id*. at 904.

On October 30, 2015, Mr. Gordon, through Ms. Pazner,
requested leave to file an appeal with the Court of Appeals of
the State of New York.  (ECF No. 6-11, Request for Leave to
Appeal.)  On December 22, 2015, the Court of Appeals denied the
request.  *People v. Gordon*, 26 N.Y.3d 1088 (2015).

On September 19, 2016, Mr. Gordon timely filed his
petition for writ of *habeas corpus* pursuant to Section 2254.

Mr. Gordon's petition argues that his conviction and sentence are unconstitutional for four reasons: (1) ineffective assistance of counsel during arraignment for withdrawing the timely request to testify before the grand jury; (2) ineffective assistance of trial counsel during plea negotiations for failure to advise Mr. Gordon of a plea agreement, and electing to go to trial three days after appointment; (3) the verdict was against the weight of the evidence; and (4) Mr. Gordon's sentence of consecutive eight year terms on the three counts of Criminal Sale of a Controlled substance was excessive.  (Pet. at 7-8.) On December 12, 2016, Respondent filed its opposition to Mr. Gordon's petition.  On February 28, 2017, Mr. Gordon filed a reply.

On March 6, 2017, Mr. Gordon filed a motion to stay and hold in abeyance the instant *habeas* proceeding, seeking "permission to go back to the Court of Appeals to file Leave to Appeal for [his *pro* se] supplemental brief."  (ECF No. 9, Motion to Stay and Hold in Abeyance, at 2.)  On March 8, 2017, this court granted the motion to stay, so that Mr. Gordon could seek relief in state court.  (Dkt. Order March 8, 2017.)

On April 16, 2019, and subsequently on February 3, 2020, this court ordered the parties to jointly provide status updates regarding the status of any state court proceedings. (Dkt. Order April 16, 2019; Dkt. Order Feb. 3, 2020.)  In

14

response to both orders, Assistant District Attorney Seth Lieberman, Esq. provided letters stating that he was "unaware of . . . any state court proceedings pertaining to [Mr. Gordon] that have taken place subsequent to the filing of petitioner's *habeas* petition." (ECF No. 11, ADA Seth Lieberman Status Update Letter filed April 17, 2019, at 1; ECF No. 13, ADA Seth Lieberman Status Update Letter filed February 5, 2020, at 1.)

On June 10, 2020, this court ordered Mr. Gordon to submit a letter to this court by no later than July 10, 2020 conveying his view about whether his case should remain stayed. (Dkt. Order June 10, 2020.)  The order was served by the Clerk of Court by mail upon Mr. Gordon at the facility at which he is currently incarcerated.  Mr. Gordon has not provided a response, and so the court accepts Respondent's statement that Mr. Gordon has not sought relief in a state court proceeding since his request for a stay.[5]  Therefore, this court lifts the stay.

---

[5] Mr. Gordon's motion to stay his *habeas* petition on the basis that his appellate counsel failed to submit his *pro se* supplemental brief to the Court of Appeals of the State of New York does not appear to be supported by the record.  Ms. Pazner's October 30, 2015 letter to the chief judge of the Court of Appeals requested leave on the issues raised in Mr. Gordon's main brief as well as his *pro se* supplemental brief, which was purportedly included in this request for leave.  (ECF No. 6-11, Request for Leave to Appeal dated October 30, 2015, at 2.)  Further, even if Mr. Gordon's claims are unexhausted, this court is "given discretion to deny unexhausted claims on the merits, although it is not required to do so." *Velazquez v. Poole*, 614 F. Supp. 2d 284, 311 (E.D.N.Y. 2011) (citing 28 U.S.C. § 2254(b)(2)).

**<u>Legal Standard</u>**

Pursuant to Section 2254, a district court shall issue a writ of *habeas corpus* to an individual in state custody "only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). A district court may only issue such a writ if the state court adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Lindstadt v. Keane*, 239 F.3d 191, 198 (2d Cir. 2001).

In reviewing the instant petition, the court is mindful that Mr. Gordon is proceeding *pro se*, and thus reviews his petition "with a lenient eye." *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and a '*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Therefore, the Court interprets Mr. Gordon's petition as raising the strongest arguments it suggests. *Harris*

*v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Martin v. United States*, 834 F. Supp. 2d 115, 119 (E.D.N.Y. 2011) (citing *Williams*, 722 F.2d at 1050).

## Discussion

### I. Grounds One and Two: Ineffective Assistance of Counsel

Mr. Gordon asserts two ineffective assistance of counsel claims in his *habeas* petition: (1) ineffective assistance of counsel in connection with the withdrawal of his motion to testify before the grand jury, and (2) ineffective assistance of trial counsel during plea negotiations and in preparation for trial.  (Pet. at 7-8.)  For the reasons below, both claims are respectfully denied.

#### A. Legal Standard

A "defendant's Sixth Amendment right to counsel attaches at all critical stages in the proceedings after the initiation of formal charges, which has been held to include plea negotiations."  *United States v. Gordon*, 156 F.3d 376, 379 (2d Cir. 1998) (quotation omitted).

In reviewing an ineffective assistance of counsel claim, courts must apply the "highly demanding" standard set forth in *Strickland v. Washington*, 466 U.S. 688 (1984).  *See Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).  The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,"

and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 89; *see also United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005).

Under *Strickland*'s two-prong test for ineffective assistance of counsel, *habeas* petitioners must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 703.  If a petitioner fails to meet one prong, the court need not consider the other, and "where 'it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'"  *Parker v. Ercole*, 666 F.3d 830, 834 (2d Cir. 2012) (quoting *Strickland*, 466 U.S. at 697).

To satisfy the first prong of the *Strickland* test, petitioners are required to demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 at 687.  To satisfy the second prong, petitioners must establish that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different." *Williams* v. *Taylor*, 529 U.S. 362, 391 (2000).  A petitioner does not satisfy

the prejudice prong by merely showing that counsel's errors had "some conceivable effect," but "a [petitioner] need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.

Further, "[w]hen a federal court reviews a state court decision under [Section] 2254, 'the question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The petitioner "must overcome a separate hurdle on his complaints about counsel's performance at . . . trial, because the state court specifically determined counsel was not ineffective under *Strickland*." *Bonds v. Keyser*, 2020 WL 1550575, at *14 (E.D.N.Y. Mar. 31, 2020).

"[A] federal *habeas* court may not issue the writ simply because that court concludes in its independent judgement that the state-court decision applied *Strickland* incorrectly." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citing *Bell v. Cone*, 535 U.S. 685, 698-699 (2002)). A *habeas* petitioner has the "burden to show that the state court applied *Strickland* to the facts in an objectively unreasonable manner, which is 'different from an incorrect application of federal law.'" *Id*. (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). The

standard created by *Strickland* and the Antiterrorism and
Effective Death Penalty Act of 1996 ("AEDPA") are both highly
deferential, and "when the two apply in tandem, review is
'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011)
(quoting *Knowles*, 556 U.S. at 123).  "[T]he question is not
whether counsel's actions were reasonable," but rather "whether
there is any reasonable argument that counsel satisfied
*Strickland*'s deferential standard." *Id*.

Even if the state court does not explain its decision,
the petitioner still bears the burden of showing that "there was
no reasonable basis for the state court to deny relief." *Jean
v. Greene*, 523 F. App'x 744, 747 (2d Cir. 2013) (quoting
*Harrington*, 562 U.S. at 99).  Therefore, a "federal court might
agree with a petitioner that the relevant federal law should
have been interpreted differently than the way it was
interpreted by the state court yet still conclude that the state
court's application of the federal law was reasonable." *Dunlap
v. Burge*, 583 F.3d 160, 165 (2d Cir. 2009) (citing *Price v.
Vincent*, 538 U.S. 634, 641 (2003)).

B. Failure to Exhaust

Respondent contends that one of Mr. Gordon's grounds
for ineffective assistance of counsel, based on trial counsel
electing to go to trial "three days" after he was appointed, was
not raised in Mr. Gordon's appellate briefs, and should be

20

denied on the ground that it was not exhausted in state court.
(Opp. at 7-8.)

Respondent is correct that Mr. Gordon did not exhaust
the claim for ineffective assistance of counsel for proceeding
to trial, because he did not raise it in his petition to the
Court of Appeals. (*See* ECF No. 6-11, Request for Leave to
Appeal, at 2-3.) "Because the exhaustion doctrine is designed
to give the state courts a full and fair opportunity to resolve
federal constitutional claims before those claims are presented
to the federal courts, . . . state prisoners must give the state
courts one full opportunity to resolve any constitutional issues
by invoking one complete round of the State's established
appellate review process." *O'Sullivan v. Boerckel*, 526 U.S.
838, 845 (1999).

Accordingly, Mr. Gordon's claim for ineffective
assistance of counsel, based on his trial counsel's decision to
proceed to trial in a short amount of time, is procedurally
barred. Nonetheless, the court will briefly address the merits
of this ground below, along with his other asserted grounds for
ineffective assistance of counsel.

C. Ground One: Ineffective Assistance of Counsel During
   Arraignment

Mr. Gordon asserts that during arraignment, his
counsel, Mr. Reuland, rendered ineffective assistance of counsel

by withdrawing Mr. Gordon's timely request to testify before the grand jury. (Pet. at 7.) This claim is without merit.

As an initial matter, the Appellate Division adjudicated this claim on the merits, holding that Mr. Gordon had "not established that his attorney's failure to effectuate his appearance before the grand jury constituted ineffective assistance of counsel under the circumstances of the case." *Gordon*, 132 A.D. at 905. Therefore, this court considers this claim under the "doubly" deferential standard set forth by the AEDPA in tandem with *Strickland*. *Harrington*, 562 U.S. at 105.

Mr. Gordon is unable to demonstrate any prejudice from the decision to withdraw his request to testify because "[a]ny prejudice suffered by petitioner was rendered harmless by his conviction at trial by the petit jury, which assessed his guilt under a heightened standard of proof." *Turner v. Fischer*, 2003 WL 22284177, at *6 (E.D.N.Y. Aug. 20, 2003) (citing *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989)). It is well established that, even if there were a defect in a grand jury's indictment, that defect was cured when a defendant is subsequently found guilty beyond a reasonable doubt by a jury. *See United States v. Mechanik*, 475 U.S. 66, 67 (1986) ("The petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the

convictions must stand despite the rule violation."); *Bingham v. Duncan*, 2003 WL 21360084, at *4 (S.D.N.Y. June 12, 2003) ("Given that any defect in the grand jury proceeding was cured by petitioner's subsequent conviction . . . 'it necessarily follows as a matter of law that petitioner cannot establish that any errors made by his trial counsel with respect to the grand jury proceeding prejudiced him, thereby foreclosing the possibility of a Sixth Amendment violation.'").

Further, there is "no federally-cognizable ineffective assistance claim concerning advice regarding the state grand jury process." *Motalvo v. Annetts*, 2003 WL 22962504, at *24 (S.D.N.Y. Dec. 17, 2003); *see also Sanchez v. Colvin*, 2016 WL 5930150, at *21 n.41 (S.D.N.Y. Oct. 7, 2016) ("Moreover, [petitioner's] claim that [counsel] was ineffective because she waived his right to testify at the grand jury is not cognizable on federal habeas review.").

Mr. Gordon's claim fails to show prejudice, and in any event is not cognizable on federal *habeas* review.  The claim is, therefore, respectfully denied.

D. Ground Two: Ineffective Assistance of Trial Counsel

Mr. Gordon asserts that his trial counsel, Mr. Smallman, rendered ineffective assistance by failing to advise Mr. Gordon of a plea or offering any professional advice on a plea, and by electing to proceed to trial with only "three days"

to prepare.  (Pet. at 8.)  As discussed above, his claim that trial counsel had insufficient time to prepare was not exhausted in state court.  Further, both of Mr. Gordon's assertions regarding Mr. Smallman are unsupported by the record and are unavailing.

The court first considers Mr. Gordon's assertion that Mr. Smallman rendered ineffective assistance by electing to proceed to trial "three days" after his appointment.  While not clear in his petition, Mr. Gordon's reply brief cites *United States v. Cronic*, 466 U.S. 648 (1984), which implies that his argument is that the state court constructively denied his right to effective assistance of counsel by only providing Mr. Smallman limited time to prepare a defense.  (ECF No. 9-1, Reply Brief, at 6.)

In *Cronic*, the Supreme Court did not create a *per se* rule that a court constructively denies effective assistance with a late appointment of counsel, but rather held that "only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial." 466 U.S. at 661-62.  "*Cronic* instructed that a presumption of prejudice would be in order in circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Florida v. Nixon*,

543 U.S. 175, 190 (2004) (quotation omitted); *see also Nunez v. Miller*, 2001 WL 1773731, at *5 (E.D.N.Y. July 12, 2001) ("*Cronic* did not hold that prejudice may be presumed simply because [] errors were made by counsel during the course of trial.  On the contrary, *Cronic* made clear that prejudice will be presumed only in the most exceptional cases.")

The court finds that Mr. Smallman's appointment is not an "exceptional case[]" of constructive denial of counsel. "Constructive denials of counsel include counsel's total or near-total derelictions in representation." *Restrepo v*. Kelly, 178 F.3d 634, 639 (2d Cir. 1999) (collecting cases).  Examples include filing a cursory five-page brief on appeal, *Jenkins v. Coombe*, 821 F.2d 158, 161 (2d Cir. 1987), and sleeping through trial, *Tippins v. Walker*, 77 F.3d 682, 686 (2d Cir. 1996).

The court appointed Mr. Smallman as counsel after Mr. Gordon made clear that he was unhappy with his attorney, Mr. Goldberg.[6]  (March 6, 2012 Proceeding at 9-10, 24-26.)  After his appointment, Mr. Smallman stated that he was "comfortable" with representing Mr. Gordon and that he was "fine" with proceeding to trial the following week.  (*Id*. at 25.)  Mr. Goldberg also stated that he had briefed Mr. Smallman, and that Mr. Smallman

---

[6] Mr. Gordon's previous counsel, Mr. Reuland, had been relieved by Mr. Gordon because Mr. Gordon was unhappy with his performance, and Mr. Goldberg had been retained to replace the subsequent court-appointed attorney, Mr. Baker. Mr. Gordon was represented by a total of five attorneys in the lead-up to trial.

could "call upon [Mr. Goldberg] to confer" regarding Mr. Gordon's case.  (*Id.* at 24.)   Mr. Gordon has not pointed to any specific error made by Mr. Smallman that was caused by the limited time he had to prepare for trial.   The record reveals that Mr. Smallman actively cross-examined the prosecution's witnesses, and moved to dismiss the indictment at the end of the prosecution's case.

Furthermore, Mr. Smallman did not have only "three days," as asserted by Mr. Gordon, to prepare for trial; rather, Mr. Smallman was originally provided seven days from his appointment on March 6 to prepare for trial on Tuesday, March 13, 2012. (*See id.* at 25.)   In fact, trial did not begin until Thursday, March 15, 2012.  (Trial Tr. at 1.)   It is true that there were only three days between Mr. Smallman's appointment on March 6 and ADA Albanese's plea offer before the court on March 9, 2012, but that could not have prejudiced Mr. Gordon because three days was sufficient time for counsel to prepare to have a discussion about the risks of rejecting a plea offer.

Considering the surrounding circumstances, the court finds that the trial court did not constructively deny Mr. Gordon's right to effective counsel.  *See United States v. Smith*, 982 F.2d 757, 759-63 (2d Cir. 1992) (denying claim that the state court constructively denied the right to effective assistance when providing less than three days to prepare for

revocation hearing).  Even if this ground for relief were not procedurally barred, it is without merit.

Furthermore, Mr. Gordon's ineffective assistance claim regarding plea negotiations is, likewise, meritless.  Mr. Gordon's petition only generally asserts, without support, that trial counsel failed to advise Mr. Gordon of a plea offer and offer advice regarding a plea offer.  (Pet. at 8.)

The Appellate Division adjudicated this claim on the merits and held that Mr. Gordon "failed to demonstrate that he was deprived of the effective assistance of trial counsel based on allegations that the attorneys who represented him did not adequately advise him regarding the prosecution's plea offers," because "[t]hat contention is refuted by the record of pretrial proceedings in this case, which establishes that he received meaningful representation."  *Gordon*, 132 A.D. at 905.  Thus, the state court's decision is reviewed to determine if it involved an unreasonable application of federal law.

In order to show prejudice during plea negotiations where a plea offer "has been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 147 (2012); *see also Lafler v. Cooper*, 566 U.S. 156, 164 (2012).  The Second Circuit's "precedent

requires some objective evidence other than defendant's
assertions to establish prejudice." *Pham v. United States*, 317
F.3d 178, 182 (2d Cir. 2003) (citing *United States v. Gordon*,
156 F.3d 376, 380-81 (2d Cir. 1988)); *see also Crisci v. United
States*, 108 F. App'x 25, 27 (2d Cir. 2004) (holding that
prejudice "require[s] some objective evidence other than
defendant's self-serving assertions[.]").

The only known plea agreement that Mr. Gordon's trial
counsel, Mr. Smallman, would have been able to advise Mr. Gordon
on was ADA Albanese's final offer, on March 9, 2012, of a plea
agreement stipulating to four years of incarceration. (March 9,
2012 Proceeding at 3-4.) ADA Albanese offered this plea
agreement in open court in the presence of Mr. Gordon, and the
trial judge further clarified the agreement's offer to ensure
the parties understood its terms. (*Id.* at 4.) ADA Albanese
also made clear that each count carried a possible jail sentence
of "two years jail to 12 years jail," and that the prosecution
would "be seeking consecutive time based on the defendants'
record and some other factors." (*Id.*) Mr. Smallman rejected
this plea agreement, stating that he "had discussions with [Mr.
Gordon] since being assigned to the case," and there had not
been "any indication at this point that [Mr. Gordon] was
interested in disposing of the matter." (*Id.* at 5.)

Therefore, Mr. Gordon cannot demonstrate that counsel was deficient, or that any prejudice resulted.  The plea offer was announced, and counsel rejected it, in the presence of Mr. Gordon, and Mr. Gordon does not point to another plea offer that was available to trial counsel.  Mr. Gordon's blanket assertion that he had not been properly advised by counsel (Pet. at 8.) is thus unsupported.  Mr. Gordon has not provided an affidavit or statement that he would have accepted the prosecution's plea offer if properly advised.  *See Puglisi v. United States*, 538 F.3d 209, 217 (2d Cir. 2009) (holding that district court's denial on a claim that petitioner would have accepted plea agreement when petitioner failed to provide sworn testimony or a sworn affidavit in support).  Rather, in reviewing Mr. Gordon's *pro se* appellate brief, his argument focused on his counsel's performance for failing to "double-down" on the desirability of an offer, "even when the defendant appears disinterested in an offer." (*Pro Se* Appellate Br. at 10.)  Mr. Smallman was not required to "double-down" if Mr. Gordon stated he was not interested in an offer.

Mr. Gordon has not shown that there was a plea offer that was not communicated, and he cannot credibly assert that he would have accepted a plea offer.  Consequently, the court finds that the Appellate Division's ruling was not an unreasonable

application of federal law.  Thus, Mr. Gordon's ineffective assistance of trial counsel claim is respectfully denied.

## II.      Ground Three: Weight of the Evidence

Mr. Gordon alleges that his conviction was against the weight of the credible evidence at trial because (1) Officer Morales stated that he never saw drugs being passed; (2) Officer Morales stated that he observed a black male with facial hair, but Mr. Gordon is "very light" and at the time of arrest did not have facial hair; (3) Mr. Gordon was "search[ed] [four] times and [n]o drugs [were] found"; and (4) it was dark at the time of his arrest and the picture of the area that was shown to the jury was taken during the day.[7]  (Pet. at 8.)  These grounds for relief are without merit.

Respondent urges that Mr. Gordon's "weight of the evidence" claim is not cognizable on federal *habeas* review because it is solely a state law claim.  (Opp. at 21.)  "It is well established that 'weight of the evidence' claims are not cognizable on federal review, given the difference between such

---

[7] Mr. Gordon's main appellate brief asserted similar claims and provided arguments as to why Mr. Gordon's conviction was against the weight of the credible evidence at trial, including that: (1) Officer Morales's nighttime identification of Mr. Gordon from a distance rendered it doubtful; (2) Officer Morales's physical description of the seller was unreliable due to its lack of distinctive features; (3) Officer Morales failed to "ascertain whether the 'objects' allegedly exchanged for money were in fact cocaine"' (4) the lack of photographic evidence was a failure to support testimony; and (5) and the three prior searches of Mr. Gordon render the officer's claim that the fourth search found a substantial amount of drugs on Mr. Gordon's person "unworthy of belief."  (Main Appellate Br. at 16-25.)

a challenge and that of a challenge based on the sufficiency of the evidence." *Durden v. Greene*, 492 F. Supp. 2d 414, 419 (S.D.N.Y. 2007); *see also Bey v. Chappius*, 2019 WL 4805401, at *3 n.2 (E.D.N.Y. Sept. 30, 2019) ("Thus, a challenge to the weight of the evidence concerns 'an error of state law, for which habeas review is not available,' because it presents no federal issue.") (quoting *Douglas v. Portuondo*, 232 F. Sup. 2d 106, 116 (S.D.N.Y. 2002)); *Gumbs v. Heath*, 2013 WL 1345073, at *11 (E.D.N.Y. Mar. 29, 2013) ("Specifically, a weight of the evidence argument is a 'pure state law claim' grounded in New York Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on 'federal due process principles.'") (quoting *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001)).

Although weight of the evidence claims are not cognizable on *habeas* review, sufficiency of the evidence claims are. Because Mr. Gordon is proceeding *pro se*, the court "must read his submissions 'liberally and interpret them to raise the strongest arguments that they suggest.'" *Durden*, 492 F. Supp. 2d at 419-20. "A *pro se* litigant's failure to properly label a particular claim should not bar review of the argument where the claim is soundly developed in all other respects," and thus this court will construe Mr. Gordon's claim to be a "challenge to the legal sufficiency of the evidence, which is cognizable upon *habeas* review." *Durden*, at 420.

31

The Appellate Division construed Mr. Gordon's appellate brief to raise a claim of legal sufficiency, and held that the evidence "was legally sufficient to establish the defendant's guilt beyond a reasonable doubt." *Gordon*, 132 A.D.3d at 904. Thus, because Mr. Gordon's claim was denied on its merits in state court, the Appellate Division's decision is reviewed to determine whether it involved an unreasonable application of clearly established federal law.

A court "reviewing a sufficiency of the evidence claim in a federal *habeas corpus* proceeding must assess 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Washington v. Griffin*, 2019 WL 7598584, at *8 (S.D.N.Y. Dec. 23, 2019) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002). Under Section 2254(e)(1), "a determination of a factual issues made by a State court shall be presumed to be correct" and petitioners "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Mr. Gordon's attacks on the factual issues at his trial, which primarily seek to undermine the credibility of Officer Morales and the other testifying officers, do not meet

32

the heavy burden to overcome the presumption of correctness, because the evidence presented at trial was sufficient to support a reasonable jury's findings that Mr. Gordon sold narcotics to three people, and was in the possession of narcotics. "Guilt beyond a reasonable doubt may be established entirely by circumstantial evidence, and this evidence must not be reviewed piecemeal, but rather as a whole." *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (internal citations omitted). Officer Morales testified that he first identified Mr. Gordon at 7:00 p.m. from a distance of eight feet, and witnessed a pattern of individuals who approached Mr. Gordon to hand him money in exchange for an object from his rear waist area. (Trial Tr. 68-69.) Officer Ferreira testified that he arrested three individuals based on Officer Morales's descriptions, and found that all had narcotics in their possession. (*Id.* at 176-182.) Officer Ferreira, Officer Salamone, Officer Simon, and Sergeant Trotman all testified that they found, or had observed the recovery of, narcotics from Mr. Gordon's possession.[8] (*Id.* at 188, 251-52, 287, 341.) Further, Officer Simon stated that $1,126 in cash was recovered from Mr. Gordon's pocket. (*Id.* at 283-85.)

---

[8] Ms. Buthorn testified that the items that were recovered from Mr. Gordon were analyzed and tested positive for marijuana and cocaine. (*Id.* at 231-36.)

Viewed in its totality, the jury had sufficient evidence before it to conclude that Mr. Gordon sold the narcotics found on the three individuals, and that Mr. Gordon had narcotics in his possession.  As Mr. Gordon's claim must be construed as a challenge to the legal sufficiency of the evidence, the court does not delve into assessments of the weight of the evidence, nor does it review the credibility of the witnesses, as that was the sole domain of the jury at trial. *Douglas*, 232 F. Supp. 2d at 114 ("[Petitioner] faces a 'very heavy' burden because all inferences are to be drawn in the prosecution's favor, and because a 'conviction may be based upon circumstantial evidence and inferences based upon the evidence, and the jury is exclusively responsible for determining a witness' credibility.'") (quoting *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993)).

As there was legally sufficient evidence to support Mr. Gordon's conviction, the state court's decision was not an unreasonable application of clearly established federal law. Thus, Mr. Gordon's claim is respectfully denied.

## III.    Ground Four: Excessive Sentence

Mr. Gordon asserts that his consecutive eight year sentences for each of the three counts of Criminal Sale of a Controlled Substance in the Third Degree, to run concurrently with his sentence for one count of Criminal Possession of a

Controlled Substance in the Third Degree, for a total term of imprisonment of twenty-four years, were excessive. (Pet. at 8.)

Mr. Gordon raised this claim in his brief before the Appellate Division. (Main Appellate Br. at 25.) The Appellate Division agreed with Mr. Gordon, and ordered that the judgment be modified "by reducing the determinate terms of imprisonment imposed on each of the convictions from eight years to four years." *Gordon*, 132 A.D.3d at 904-05. As a result of the Appellate Division's order, Mr. Gordon's sentence was reduced by half, to a total term of incarceration of twelve years. Under New York law, a second felony drug offender convicted of a class B felony must receive a sentence of at least two years, and the sentence cannot exceed twelve years. NYPL § 70.70(3)(i). Thus, Mr. Gordon's revised sentence, with terms totaling twelve years, fell within the permissible range.

"An excessive sentence claim may not provide grounds for *habeas corpus* relief where a petitioner's sentence is within the range prescribed by state law." *Taylor v. Connelly*, 18 F. Supp. 3d 242, 268 (E.D.N.Y. 2014); *see also White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issues is presented where, as here, the sentence is within the range prescribed by state law."). As the Appellate Division modified Mr. Gordon's sentence to within the statutory range, Mr. Gordon's claim that his sentence was excessive is denied.

## Conclusion

For the foregoing reasons, Mr. Gordon's Section 2254 petition is DENIED and dismissed in its entirety.  Because Mr. Gordon has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (discussing certificate of appealability standard); Rules Governing Section 2254 and 2255 Cases, Rule 11 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

The Clerk of Court is respectfully directed to enter judgment in favor of Respondent, serve Mr. Gordon with a copy of this Memorandum & Order and the judgment, note service on the docket, and close this case.

**SO ORDERED.**

Dated:      Brooklyn, New York
            August 5, 2020

                                    _____/s/_____
                                    Hon. Kiyo A. Matsumoto
                                    United States District Judge